UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

IN RE FACEBOOK, INC., IPO SECURITIES AND
DERIVATIVE LITIGATION,

OPINION & ORDER
MDL No. 12-2389

Case Relates to:
    12 Civ. 6439

----------------------------------------X

A P P E A R A N C E S:

Attorneys for the Plaintiff Michael Zack
KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
By:  Gary S. Graifman, Esq.

STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
By:  Howard T. Longman, Esq.

THE GRANT LAW FIRM, PLLC
521 Fifth Avenue, Suite 1700
New York, NY 10175
By:  Lynda J. Grant, Esq.


Attorneys for NASDAQ Defendants
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
By:  William A. Slaughter, Esq.
     Margaret Osborne Padilla, Esq.
     Paul Lantieri, III, Esq.
     Stephen J Kastenberg, Esq.

**Sweet, D.J.**

Plaintiff Michael Zack ("Zack" or the "Plaintiff") has moved to remand the proposed class action, on behalf of himself and other similarity situated individuals, to the Supreme Court for the State of New York, New York County (the "State Court"), pursuant to 28 U.S.C. § 1447(c).  Plaintiff originally filed a complaint in State Court on behalf of all investors, charging the NASDAQ OMX Group, Inc. and the NASDAQ Stock Market LLC (collectively "NASDAQ" or the "Defendants") with negligence under New York law in the design of their systems and conduct during the May 18, 2012 initial public offering ("IPO") of Facebook, Inc. ("Facebook").  Defendants removed this action to the Southern District of New York and Plaintiff now moves to remand the case back to State Court.

Upon the facts and conclusions set forth below, the motion is denied.

## I. **Prior Proceedings**

The facts and prior proceedings underlying this action are set out in this Court's May 9 Opinion, In re Facebook. IPO Secs. & Derivative Litig., 12 MDL No. 2389, --- F.R.D. ---, 2012

WL 6061862 (S.D.N.Y. Dec. 6, 2012), familiarity with which is assumed. Accordingly, only a brief recapitulation of the relevant facts will be provided here.

This action is one of eleven class actions filed against NASDAQ relating to the Facebook IPO (collectively, the "NASDAQ Actions").[1] The NASDAQ Actions were filed on behalf of retail investors who contended that their orders to purchase or sell Facebook stock were not properly executed or confirmed as a result of systems issued experienced by NASDAQ on the day of the Facebook IPO.

Plaintiff, a New York citizen, commenced his original action on June 26, 2012 by filing a complaint in the Supreme Court of the State of New York on behalf of all investors, of any citizenship, whose orders were allegedly affected by NASDAQ's systems issues on the date of Facebook's IPO. (Original Compl. ¶ 48). On July 16, 2012, NASDAQ removed that

---

[1] The NASDAQ Actions also include: First New York Securities, LLC, et al., v. NASDAQ OMX Group, Inc. et al., No. 12-cv-5630 (filed 7/23/12); Goldberg v. NASDAQ OMX Group, Inc., et al., No. 12-cv-4054 (filed 5/22/12); Yan v. NASDAQ OMX Group, Inc., et al., No. 12-cv-4200 (filed 5/25/12); Alfonso v. The NASDAQ Stock Market LLC, et al., No. 12-cv-4201 (filed 5/25/12); Levy v. The NASDAQ Stock Market LLC, et al., No. 12-cv-4315 (filed 6/1/12); Amin v. The NASDAQ Stock Market LLC, et al., No. 12-cv-4403 (filed 6/5/12); Steinman v. NASDAQ OMX Group, et al., No. 12-cv-4600 (filed 6/12/12); Roderick v. NASDAQ OMX Group, et al., No. 12-cv-4716 (filed 6/15/12); McGinty v. NASDAQ OMX Group, Inc., et al., No. 12-cv-5549 (filed 6/19/12); and Eagan v. NASDAQ OMX Group, Inc., et al., No. 12-cv-6882 (filed 9/11/12).

action to the Southern District of New York under Section 4 of
the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and
on the basis of federal questions concerning NASDAQ's
obligations and privileges as a self-regulatory organization
("SRO") under the Securities Exchange Act of 1934 (the "Exchange
Act") (No. 12-cv-5466-RWS, Dkt. No. 1). On July 25, 2012,
Plaintiff voluntarily dismissed that action pursuant to Rule
41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.

On August 7, 2012, Plaintiff filed the instant action
in New York state court, limiting the class to all persons or
entities resident in New York State and who "sought to purchase
and/or sell shares of Facebook during the early stages of its
IPO process, and suffered damages from order execution
problems." (Compl. ¶ 3). On August 23, 2012, NASDAQ moved to
remove the case, asserting that the action "raises issues of
federal law" under the Exchange Act "and is thus subject to
federal question jurisdiction under 28 U.S.C. § 1331." (No. 12-
cv-6439-RWS, Dkt. No. 1, ¶ 4). On September 24, 2012, Plaintiff
timely filed his motion to remand this action to New York state
court.

On September 20, 2012, the United States Judicial
Panel on Multidistrict Litigation (the "MDL Panel") held a

hearing to determine whether the pending 41 filed actions should be transferred to the Southern District of New York.  On October 4, 2012, the MDL Panel issued a transfer order, finding that the "Southern District of New York is an appropriate transferee district for pretrial proceedings in this litigation," and reasoning that "[m]uch of the relevant discovery will be located in New York, including most discovery relating to alleged NASDAQ trading errors and discovery from the underwriter defendants, many of whom are located in New York."  In re Facebook. IPO Secs. & Derivative Litig., 12 MDL No. 2389, --- F. Supp. 2d ---, 2012 WL 4748325, at *3 (J.P.M.L. Oct. 4, 2012).  The cases were assigned to this Court for coordination or consolidation of the pretrial proceedings.  Id.

On October 10, 2012, this Court issued a Practice & Procedure Order Upon Transfer Pursuant to 28 U.S.C. § 1407 (the "October 10 Order"), governing the practices and procedures for the 41 related actions filed against NASDAQ, the Facebook defendants, and certain underwriter defendants.  On October 26, 2012, this Court issued an order denying without prejudice "any of the actions transferred to this Court by the MDL Panel or removed to this Court[.]" (the "October 26 Order").  Pre-trial conferences were held on November 7 and 14, 2012, in which a briefing schedule was set for all remand motions.

Plaintiff accordingly re-filed the instant motion to remand on November 14, 2012 and it was marked fully submitted on December 12, 2012.

## II.  **Facts**

NASDAQ is a major American stock exchange and a SRO registered with the U.S. Securities and Exchange Commission (the "SEC") to operate as a national securities exchange pursuant to Section 6 of the Exchange Act.  See In the Matter of the Application of The NASDAQ Stock Mkt. LLC for Registration as a Nat'l Sec. Exchange.; Findings, Opinion, and Order of the Comm'n, SEC Rel. No. 34-53128 (Jan. 13, 2006), 71 Fed. Reg. 3550 (Jan. 23, 2006).  It has operated as a for-profit publicly traded company since 2000.

After engaging in a competitive bidding process with the New York Stock Exchange ("NYSE"), NASDAQ won the right to host the eagerly anticipated IPO of Facebook.  On May 18, 2012, Facebook offered 421 million shares of its common stock to the public at $38.00 per share on the NASDAQ stock exchange, thereby valuing the total size of the IPO at more than $16 billion.  The IPO was initially set to open at 11:00 a.m. Eastern Standard

5

Time under the NASDAQ ticker symbol "FB," but was delayed.

According to the Complaint, the "opening was delayed due to malfunctions in NASDAQ's automated system for processing order cancellations and matching orders, which prevented certain trades from processing properly." (Compl. ¶ 25). Normally, trades and cancellations placed by retail investors through brokerage services execute nearly immediately. (Id. ¶ 26). However, given the size of Facebook's offering, coupled with the heavy demand among retail investors, the auction software could not keep up with the rush of last minute modifications. (Id. ¶ 28).

More specifically, according to NASDAQ's proposal to amend Rule 4626,[2] starting at 11:05:10 a.m., having proceeded with the Display-Only period and the Quote-Only period, NASDAQ

---

[2] Rule 4626 was adopted on January 13, 2006 as part of NASDAQ's registration as a national securities exchange. Securities Exchange Act Release No. 53128 (Jan. 13, 2006), 71 F.R. 3550 (Jan. 23, 2006) (File No. 10-131). The rule was amended in 2011 to the current version. See Securities Exchange Act Release No. 64365 (Apr. 29, 2011), 76 F.R. 25384 (May 4, 2011) (SR-NASDAQ-2011-058). Rule 4626 provides that except as set forth in the accommodation portion of the rule:

"Nasdaq and its affiliates shall not be liable for any losses, damages, or other claims arising out of the Nasdaq Market Center or its use. Any losses, damages, or other claims, related to a failure of the Nasdaq Market Center to deliver, display, transmit, execute, compare, submit for clearance and settlement, adjust, retain priority for, or otherwise correctly process an order, Quote/Order, message, or other data entered into, or created by, the Nasdaq Market Center shall be absorbed by the member, or the member sponsoring the customer, that entered the order, Quote/ Order, message, or other data into the Nasdaq Market Center."

experienced system difficulties during the NASDAQ Halt and
Imbalance Cross Process (the "Cross"), until 11:30 a.m.  See
Notice of Filing of Proposed Rule Change to Amend Rule 4626 -
Limitation of Liability, SEC Rel. No. 34-67507 (July 26, 2012),
77 Fed. Reg. 45,706, 45,709 (Aug. 1, 2012) ("Accommodation
Proposal") (attached to Graifman Decl. Dkt. No. 13).  The Cross
process during the first minutes of the Facebook IPO did not
operate as expected.  (Id. at 9).  To protect the "integrity of
the IPO process, the system [for executing the Cross] is
designed to recalculate the IPO auction if the matching engine's
view of the auction book has changed between the time of the
final calculation and the printing of the opening trade." (Id.).
In the case of the Facebook IPO, "[a]fter the initial
calculation of the Cross was completed, but before the opening
trade was printed, additional order modifications were received
by the system, changing the auction order book." (Id. at 10).
"As designed, the system recalculated the Cross to factor in the
new state of the book[, but again], changes were received before
the system could print the opening trade." (Id.).  "This
condition persisted, resulting in further delay of the opening
print[.]"  (Id.).

        During this period, NASDAQ continued to receive new
order, cancel and replace messages, and they were added to the

Cross order book. (Id.). New order, cancel and replace messages received before approximately 11:11 a.m. were acknowledged and incorporated into the Cross order book in real time. (Id.).

NASDAQ determined that a system modification was needed to resolve these issues and determined to institute the modification, but it proceeded with the IPO rather than to halt the Cross auction process. (Id.). "At 11:30:09 a.m., NASDAQ completed the Cross, printed [the opening trade] at $42.00 to the tape, and opened continuous trading," which proceeded without incident. (Id.). According to NASDAQ, at the time the system modification was implemented, it was expected that "all Cross transaction confirmation messages would be disseminated immediately thereafter." (Id.).

Some orders received by NASDAQ between 11:11 a.m. and 11:30 a.m., however, were not executed in the Cross; some were cancelled in the ordinary course by members before the Cross; some were entered into the continuous trading market at 11:30 a.m. as they should have been, and the remainder were either cancelled or released into the market at 1:50 p.m. (Id. at 11). In addition, transaction confirmation messages for orders executed in the Cross at 11:30 a.m. were not disseminated until

8

1:50 p.m.   (Id.).   In the period between 11:30 a.m. and 1:50
p.m., although system issues had prevented NASDAQ from
immediately disseminating Cross transaction reports, NASDAQ
determined not to halt trading in Facebook stock. (See Id. at
4).

Following the commencement of trading, NASDAQ believed
that the remaining system issues would be resolved promptly, and
also concluded that there was an orderly, liquid and deep market
in Facebook stock, with active trading in the stock on NASDAQ
and other markets. (Id.).   This assessment also led NASDAQ to
conclude that the conditions after 11:30 a.m. did not warrant a
halt of trading. See id.; see also Exchange Rule 4120(a)
(addressing the Exchange's authority to halt trading).

Plaintiff alleges that he placed an order with his
broker, Charles Schwab Corporation  ("Schwab") at 10:55 a.m. on
the morning of the IPO to purchase 260 shares of Facebook stock.
(Compl. ¶ 37).   At 11:38 a.m., after trading had commenced at
11:30 a.m. but before he had received any confirmation of
whether his trade had been executed, Plaintiff allegedly issued
a "cancel order" to attempt to cancel his trade. (Id.).
According to the Complaint, notwithstanding the cancel request,
Plaintiff's initial order was executed at 1:05 p.m. when NASDAQ

9

"purchased" shares "at a trade price of approximately $42.00 per share which was significantly greater than the opening price." (Id. ¶ 39).  The Complaint contends that the delay in the confirmation of the execution of Plaintiff's trade and the failure to cancel that trade were due to the system issues experienced by NASDAQ. (See Id. ¶¶ 40-43, 58-59).

Plaintiff asserts that NASDAQ was "negligent in performing these duties" (Id. ¶ 58) and that he and the putative class suffered damages as a result (Id. ¶ 59).  More specifically, the Complaint contends that NASDAQ was negligent in its design of the Cross (Id. ¶¶ 26-28, 58(b)), in its execution of the Cross for the Facebook IPO (Id. ¶¶ 28-30, 58(a), 58(c)), in its failure to "maintain an orderly trading market" (Id. ¶ 57), and in its decision not to halt trading even though "Defendants could not properly execute the Class members' trades" (Id. ¶¶ 10, 58(a)).

## III. Discussion

### A) The Standard Governing Removal

A civil action initially filed in state court may only be removed to federal court if the action is one "of which the

district courts of the United States have original

jurisdiction." 28 U.S.C. § 1441(a). Removal statutes are to be

"strictly construed, both because the federal courts are courts

of limited jurisdiction and because removal of a case implicates

significant federalism concerns." In re NASDAQ Market Makers

Antitrust Litig., 929 F. Supp. 174, 178 (S.D.N.Y. 1996).


        The burden of proving the court's jurisdiction rests

on the party asserting jurisdiction. See Montefiore Med. Ctr.

v. Teamsters Local 272, 642 F. 3d 321, 327 (2d Cir. 2011). "A

district court must remand a case to state court 'if at any time

before final judgment it appears that the district court lacks

subject matter jurisdiction.'" Vera v. Saks & Co., 335 F.3d

109, 113 (2d Cir. 2003) (quoting 28 U.S.C. § 1447(c)).


        Absent diversity of citizenship, whether federal

courts have federal question jurisdiction is typically governed

by the longstanding well-pleaded complaint rule, in which "a

suit 'arises under' federal law 'only when the plaintiff's

statement of his own cause of action shows that it is based upon

[federal law].'" Vaden v. Discover Bank, 556 U.S. 49, 60, 129

S. Ct. 1262, 173 L. Ed. 2d 206 (2009) (quoting Louisville &

Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 53

L.Ed 126 (1908)). Thus, "[u]nder the well-pleaded complaint

rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998); see also Montefiore Med. Ctr., 642 F.3d at 327 (stating that "federal subject matter jurisdiction typically exists only when the plaintiff's well-pleaded complaint raises issues of federal law, and not simply when federal preemption might be invoked as a defense to liability.")

The artful pleading rule, however, exists as an "independent corollary" to the well-pleaded complaint rule, in which a plaintiff "omit[s] to plead necessary federal questions in a complaint" to avoid removal. Franchise Tax Bd. V. Constr. Laborers Vacation Trust, 463 U.S. 1, 12, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). The artful pleading doctrine "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir. 1997) (upholding propriety of removal by union based on complete preemption and denying motion for remand). Courts may thus

determine whether the plaintiff "cloth[ed] a federal law claim in state garb" in the complaint. Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir. 1986). "If such is the case, the reviewing court will 'uphold removal even though no federal question appears on the face of the complaint." Romano v. Kazacos, 609 F.3d 512, 519 (2d Cir. 2010) (citing Rivet v. Regions Bank, 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998)).

**The Grable Exception**

Defendants contend that federal jurisdiction is proper under Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005) and its progeny. In Grable, the Supreme Court addressed the circumstances under which "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Id. at 312. Grable involved a quiet title action brought in state court under state law between two private parties. Id. at 311. Even though no federal cause of action was pled, the defendant removed the case to federal court on the ground that his right to title depended upon the validity of the process employed by his predecessor in title to enforce a federal tax lien. Id.

The Supreme Court affirmed the exercise of jurisdiction, noting that while federal question jurisdiction is typically invoked in respect to causes of action created by federal law, the Court had "recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Id. at 312 (citation omitted).  Thus, federal question jurisdiction is appropriately exercised when a case involves "a state-law claim [that] necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

## B) Sufficient Federal Interests Exist to Confer Federal Question Jurisdiction

Plaintiff contends that Defendants cannot meet their burden of demonstrating that the instant action raises a disputed federal issue, and that the narrow exception of the well-pleaded complaint rule in Grable does not require the invocation of federal jurisdiction.  Specifically, Plaintiff asserts that the Complaint sets out a prima facie claim of

negligence,[3] a claim under New York state law which is without
any references to the federal securities laws.  Thus, Plaintiff
contends that his "claims do not implicate any disputed federal
questions which would give rise to federal jurisdiction" (Pl.
Memo. at 10).  Plaintiff also maintains that a finding that
federal jurisdiction is lacking would be consistent with the
Second Circuit's decision in Barbara v. New York Stock Exch., 99
F.3d 49 (2d Cir. 1996), as "the mere application or
interpretation of the internal rules of a self regulatory
organization, including a national stock exchange formed
pursuant to the [Exchange Act] such as NASDAQ, does not present
a substantial question of federal law giving rise to federal
jurisdiction."  (Pl. Memo. at 12).

Defendants, on the other hand, contend that remand
would be improper because the federal issues underlying
Plaintiff's state law claims are sufficiently substantial to
confer federal question jurisdiction.  Specifically, that the
resolution of Plaintiff's claims concerning NASDAQ's decisions

---

[3] The elements of a prima facie negligence claim in New York are:  the
existence of a duty of care owed to the plaintiff, a breach of that duty,
such that the breach proximately caused the plaintiff's injuries.  See Pulka
v. Edelman, 40 N.Y.2d 781 (1976).  Here, the Complaint alleges that
Defendants owed Plaintiff and the class a duty of reasonable care to design
and maintain its automated system, so that it worked properly during the
Facebook IPO.  It further alleges that Defendants had a duty to execute trade
orders promptly, accurately, and when necessary to maintain an orderly
trading market, or halt trading or cancel the Facebook IPO in the foreseeable
event that Defendants could not properly execute the class members' trades.
(Compl. ¶ 57).

to delay the Facebook IPO and to not halt trading after the
Cross was executed at 11:30 a.m. on May 18, 2012, implicates the
substantial federal question of whether NASDAQ's conduct was
consistent with its regulatory responsibilities.  (Def. Memo. at
17).  Thus, according to Defendants, Plaintiff's claims are
appropriately subject to jurisdiction by this Court because the
existence and scope of any duty owed by NASDAQ to Plaintiff with
respect to its decisions to proceed with the Facebook IPO Cross
and not to halt trading are federal questions, the resolution of
which is governed by the Exchange Act and the rules promulgated
and approved by the SEC thereunder.  (Def. Memo. at 18).


          In Barbara, upon which Plaintiff relies, the SEC
initiated an investigation into alleged misconduct by Barbara, a
floor clerk at the NYSE.  Barbara, 99 F.3d at 51.  After the SEC
filed disciplinary charges, the NYSE suspended Barbara from
working on its floor, and he commenced an action in state court
alleging various state law claims on the premise that the NYSE's
actions were contrary to its internal rules governing admission
to the exchange floor.  Id. at 52.  Barbara's complaint alleged
that the NYSE had wrongfully barred him from the Exchange floor,
thereby damaging his reputation and causing him to lose
employment opportunities.  Id.  The NYSE subsequently removed
the action to federal court, and the district court dismissed

16

Barbara's suit on grounds of failure to exhaust administrative
remedies.  Id. at 52-53.  On appeal, the Second Circuit affirmed
the dismissal.  Id. at 51.

     Although Barbara did not move to remand and the
jurisdictional issue was not addressed by the district court or
raised by either party on appeal, the Second Circuit sua sponte
raised the question of subject matter jurisdiction.  Id. at 53.
The Court, in dictum, noted that Barbara's original complaint
did not present a federal question sufficient to justify the
district court's exercise of subject matter jurisdiction, as
"the existence vel non of . . . a private right of action [under
federal law] is the starting point for our inquiry into the
substantiality of the federal questions involved in a lawsuit."
Id. at 54.  The Court reasoned that Barbara had no such federal
claim because "the class of persons for whose benefit section
78f(d) [of the Exchange Act] was enacted consisted of investors
in the securities markets, [thus] any private right of action
under section 78f(d) was available only to such investors and
did not extend to member organizations of securities exchanges"
or their employees.  Id. at 54 (stating that Barbara was not a
member of the investing public, "but rather of the class of
persons whose conduct is regulated by the Exchange pursuant to
its duties under the Exchange Act.").  The Court determined that

17

internal rules of an exchange, such as its disciplinary rules and procedures, are "contractual in nature . . . interpreted pursuant to ordinary principles of contract law, an area in which the federal courts have no special expertise." Id. at 54-55. Accordingly, the Court concluded that Barbara's state law claims were insufficiently substantial to confer federal question jurisdiction. Id. at 55.

Here, Plaintiff relies on Barbara for the broad proposition that the claimed violation of an exchange's own rules cannot justify exercise of federal question jurisdiction, stating that "even if Plaintiff's negligence claims were dependent upon reference to NASDAQ's internal rules, federal jurisdiction would not be invoked." (Pl. Memo. at 13-14). The facts in this case, however, are distinguishable from Barbara. First, Plaintiff is not a member of the Exchange and has no contractual relationship with NASDAQ. Thus, unlike Barbara's claim, Plaintiff's claim is not a matter of contract interpretation, but a matter of what duties a national securities exchange owes to members of the investing public. These duties and obligations are imposed on exchanges, such as NASDAQ, pursuant to the Exchange Act and the rules and regulations promulgated thereunder. Unlike the interpretation of ordinary principles of contract law in Barbara, here, an

18

examination of the Exchange Act's provisions is a field in which federal courts have substantially greater expertise than state courts.

Second, unlike Barbara who was employed as a floor trader, the Plaintiff and the class of investors are precisely the persons for whose benefit the Exchange Act was enacted and for whose protection an exchange must follow such rules and regulations. See 15 U.S.C. § 78b (stating that regulation and control of securities exchanges are necessary because, among other things, it protects "interstate commerce, the national credit, the Federal taxing power, . . . the national banking system and Federal Reserve System, and [ ] insure[s] the maintenance of fair and honest markets in such transactions."); see also, e.g., Quote-Only Period Approval Order, 64 Fed. Reg. at 4730 (finding that the Quote-Only Period is consistent with the Exchange Act's requirements that exchange rules "be designated to promote just and equitable principles of trade, remove impediments to and perfect the mechanism of a free and open market and national market system . . . [and] produce fair and informative quotations."); IPO Order Holding Bin Proposal, 77 Fed. Reg. at 19,045 (stating that the rule provision allowing the entry of IPO Cross orders beginning at 7 a.m. are designed to, among other things, "protect investors and the public

interest.").

In addition, in Barbara, the underlying substantive
issue was whether the NYSE had conducted its disciplinary
proceedings consistently with its own internal rules and its
contractual obligation to its members.  Here, in contrast,
Plaintiff's negligence claims depend on more than "reference to
NASDAQ's internal rules," as the Plaintiff suggests.  (Pl. Memo.
at 14).  Rather, Plaintiff's claims are based on NASDAQ's
conduct in determining whether to suspend the Facebook IPO Cross
or halt trading in Facebook stock after the Cross.  Plaintiff
asserts that "[i]nstead of making the decision to halt trading
or cancel the IPO, in order to save face, Defendants made the
negligent decision to delay the opening by only 30 minutes . . .
[and] then negligently proceeded with the IPO . . . ."  (Compl.
¶ 25-26).  Plaintiff also alleges that, despite the system
issues that prevented timely distribution of IPO Cross
transaction reports and caused certain IPO Cross orders to be
mishandled, NASDAQ "still did not cancel the [Facebook] IPO" and
thus failed to "maintain an orderly trading market."  (Compl. ¶
57, 58(a)).

Courts in this Circuit and elsewhere have regularly
accepted jurisdiction over state law claims asserted against

national securities when such claims are founded upon duties
imposed under the rules and regulations promulgated pursuant to
the Exchange Act.  See D'Alessio v. New York Stock Exch., 258
F.3d 93, 101-102 (2d Cir. 2001) (finding a substantial federal
interest where the resolution of the claims required "a court to
construe federal securities laws and evaluate the scope of the
NYSE's duties, as defined under the Exchange Act and the
regulations and rules thereto, in enforcing and monitoring a
member's compliance with those laws."); Sparta Surgical Corp. v.
Nat'l Ass'n of Sec. Dealers, Inc, 159 F.3d 1209, 1212 (9th Cir.
1998) (holding that although plaintiff's "theories are posited
as state law claims, they are founded on the defendants' conduct
in suspending trading and de-listing the offering, the propriety
of which must be exclusively determined by federal law.");
Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc., 149 F.3d 330, 331
(5th Cir. 1998) (affirming denial of motion to remand where
claims "though carefully articulated in terms of state law, are
actions at law seeking to enforce liabilities or duties created
by federal securities laws which are governed exclusively by
federal courts pursuant to 15 U.S.C. § 78aa.").

        In D'Alessio, for example, the Second Circuit found
that "the 'federal ingredient' in the present action [was] far
more significant than the federal interest in Barbara."  258

F.3d at 103.  While D'Alessio's claims were cast as state law
claims, the Court reasoned that D'Alessio's complaint did not
"simply challenge the propriety of disciplinary proceedings
conducted by the NYSE."  Id. at 101.  Instead, D'Alessio's
claims were "premised, in large part, on the NYSE's failure to
enforce and monitor compliance by its members with the Exchange
Act and the rules and regulations thereunder, as well as the
rules promulgated by the NYSE pursuant to the Exchange Act."
Id. at 103.  The Second Circuit noted that "[t]he source of the
duty imposed on the NYSE (as well as other SROs) is found in
federal law; namely, in the Exchange Act.  Thus, it is the
propriety of the NYSE's actions, as prescribed under federal
law, that is at the heart of D'Alessio's claims."  Id. (emphasis
in the original).  The Court concluded that there was a
sufficiently substantial federal interest to support removal to
federal court because the adjudication of the claims
"necessarily require[d] a court to construe both the federal law
governing securities trading on a national exchange and the
NYSE's role, as defined under federal law, in enforcing and
monitoring a member's compliance with those laws."  Id. at 104
(emphasis in the original).

Plaintiff's state law negligence claims in the instant
case similarly implicate a substantial federal interest that

"does not simply challenge the propriety of disciplinary proceedings conducted by" an exchange. Id. at 101; see also Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 814 n.12, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) (suggesting that "our § 1331 decisions can be understood as an evaluation of the nature of the federal interest at stake."). Rather, an inquiry as to whether NASDAQ's conduct in connection with the Facebook IPO was or was not consistent with the duties imposed upon NASDAQ as a national securities exchange registered under the Exchange Act, the rules and regulations promulgated by the SEC under the Exchange Act, and NASDAQ's own rules[4] require a vastly more significant federal interest. See e.g., Id. at 103 (stating that there is a strong federal interest where an

---

[4] Of particular relevance to the claims asserted in this case, NASDAQ adopted, through the Exchange Act's public rulemaking process and with SEC approval, rules governing the Exchange's IPO Cross process – namely, Exchange Rules 4120("Trading Halts") and 4753 ("Nasdaq Halt and Imbalance Crosses"). As explained in a recent filing amending Rule 4753:

> Rule 4120(a)(7) provides that trading in an IPO security is halted until the security is released for trading. Rule 4120(c)(7)(B) establishes the process for lifting the halt and commencing trading.

> Under that rule, prior to terminating the halt, there is a 15-minute Display-Only Period during which market participants may enter quotes and orders into the NASDAQ Market Center. At the conclusion of the Display-Only Period trading commences through the halt cross process provided for in Rule 4753.

Notice of Filing and Immediate Effectiveness of Proposed Rule Change To Amend Rule 4120, SEC Rel. No. 34-66652 (Mar. 23, 2012), 77 Fed. Reg. 19,044 (Mar. 29, 2012) (amending Rule 4120 to permit IPO orders to be entered prior to the start of the Display-Only Period on the day of an IPO).

The current versions of Exchange Rules 4120 and 4753 are available at http://nasdaq.cchwallstreet.com/.

inquiry is necessary as to whether the NYSE "satisfactorily performed its duty in identifying potential violations of the federal securities laws."); Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 788 F.2d 1500, 1504 (11th Cir. 1986) (noting that "[t]he comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest."); Frayler v. New York Stock Exchange, Inc., 118 F. Supp. 2d 448, 451 (S.D.N.Y. 2000) (finding that "the question of whether the [NYSE] properly interpreted § 11(a) of the Exchange Act is wholly a matter of federal law, and indeed a matter of intense federal concern given the importance of federal regulation of the stock market. Congress expressly recognized this importance when it gave the federal courts exclusive jurisdiction over violations of the Exchange Act. 15 U.S.C. § 78aa."). The Second Circuit has also noted that other courts have held "that state law claims against self-regulatory organizations are preempted by the Exchange Act." Barbara, 99 F.3d at 59 (citing cases).

In addition to Plaintiff's contentions about NASDAQ's decision not to suspend the Cross and not to halt trading, Plaintiff challenges the design of the NASDAQ Cross and its operation of the Facebook IPO. Plaintiff asserts that the Cross "had significant design flaws," and finds fault with NASDAQ's

decision to keep the pre-IPO trading window open for four hours
before a mid-day IPO[.]" (Pl. Memo at 5-6). These features of
the NASDAQ IPO Cross, however, were adopted through the public
rulemaking process established by the Exchange Act, under the
strict oversight of the SEC, as consistent with the requirement
of the Exchange Act. See, e.g., Quote-Only Period Proposal, 59
Fed. Reg. at 33,808; Quote-Only Period Approval Order, 64 Fed.
Reg. at 4729; Quote-Only Period Rule Proposal, 68 Fed. Reg. at
54,256; 71 Fed. Reg. at 14,272; 77 Fed. Reg. at 19,044; Halt
Cross Rule Proposal, 71 Fed. Reg. at 19,573; 72 Fed. Reg. at
51,693 (amending Rule 4120 with respect to the Display-Only
period); Halt Cross Approval Order, 71 Fed. Reg. at 24,879; IPO
Order Holding Bin Proposal, 77 Fed. Reg. at 19,044. The
resolution of these claims also requires a court to construe
federal securities laws and therefore implicates a substantial
federal question.

Taken together, while Plaintiff's cause of action is
one pled under state law, it necessarily concerns a "federal
issue, actually disputed and substantial, which a federal forum
may entertain without disturbing any congressionally approved
balance of federal and state judicial responsibilities."
Grable, 545 U.S. at 314. Accordingly, there are substantial
federal concerns prominently figuring in the instant case

sufficient to confer federal question jurisdiction.


## IV.  Conclusion


Based upon the conclusions set forth above, the Plaintiff's motion to remand is denied.


It is so ordered.

New York, NY
February , 2013

ROBERT W. SWEET
U.S.D.J.